**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donna L. Stypeck,<br><br>                Plaintiff,<br><br>v.<br><br>City of Clarkdale et al.,<br><br>                Defendants. | No. CV-15-08163-PCT-DGC<br><br>**ORDER** |

      On March 4, 2016, Plaintiff filed an amended complaint, asserting claims against Defendant Kathy Parker under 42 U.S.C. §§ 1983 and 1985. Doc. 54. Defendant Parker moves for judgment on the pleadings. Doc. 62. The issues are fully briefed, Docs. 67-68, and no party has requested oral argument. The Court will grant the motion.

**I.  Background.**

      In June 2015, Plaintiff's dog was involved in an altercation with Richard Calvert's horse. Doc. 1. Calvert told the authorities that Plaintiff's dog bit his horse and that veterinary treatment was required. *Id.* In August 2015, Defendant Parker sent a letter to Plaintiff asking to interview her about the incident. Doc. 54, ¶ 4. The letter was signed by Jonathan Millet, an attorney with the firm Boyle, Pecharich, Cline, Whittington, & Stallings, P.L.L.C. ("Boyle PLLC"). *Id.* at 12. Boyle PPLC has contracted with the Town of Clarksdale to serve as its town prosecutor. Doc. 21 at 18-22.

      When Plaintiff called Parker, Parker allegedly told Plaintiff: "And here's how it goes. If you don't pay the vet bill [for Calvert's horse], then charges will be filed."

Doc. 54, ¶ 4. Plaintiff agreed to pay the vet bill. Parker sent a follow-up letter, signed by Millet, confirming this agreement and stating that Millet would "reconsider [his] decision not to file charges" if she did not pay the vet bill as agreed. *Id.*, ¶ 5, and p. 13.

Plaintiff filed claims under 42 U.S.C. §§ 1983 and 1985 against Millett and Parker, asserting that they violated the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Doc. 1. Defendants filed a Rule 12(c) motion. The Court dismissed the claims against Millet, finding that his conduct was protected by absolute prosecutorial immunity. Doc. 40 at 2-3. The Court held that Parker was not entitled to absolute immunity because she performed only an administrative role and was not "'responsible for the decision to initiate or continue a proceeding.'" *Id.* at 4 (quoting *Butz v. Economou*, 438 U.S. 478, 515 (1978)). The Court further found that Plaintiff had not adequately pleaded any claim against Parker. *Id.* at 5. The Court therefore dismissed the claims against Parker, but granted Plaintiff leave to amend her complaint. *Id.* at 6. Plaintiff filed an amended complaint which asserts that Parker violated the Fourth, Fifth, Sixth, and Fourteenth Amendments, and is therefore liable under 42 U.S.C. §§ 1983 and 1985. Doc. 54.

**II.    Legal Standard.**

A Rule 12(c) dismissal is proper when "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The Court applies the "same standard of review" in ruling on a 12(c) motion as a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal is appropriate if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**III.    Analysis.**

Defendant argues that she enjoys absolute or qualified immunity, and that Plaintiff fails to state a claim. Doc. 62.

### A.  Absolute Immunity.

In dismissing Plaintiff's original complaint, the Court concluded that Parker was not entitled to absolute immunity because she performed only an administrative role and was not "'responsible for the decision to initiate or continue a proceeding.'" *Id.* at 4 (quoting *Butz*, 438 U.S. at 515).  Defendant disagrees with this ruling, and offers new reasons why she believes absolute immunity applies.  Doc. 62 at 5-8.  If Defendant disagreed with an aspect of the Court's prior ruling, however, she should have filed a motion for reconsideration.  The deadline for filing such a motion has long since passed, LRCiv 7.2(g)(2), and Defendant fails to identify any good cause for her delay.  Even if the Court were inclined to reconsider its prior ruling, Defendant has not shown that the ruling rested on manifest error or is undermined by new facts or legal authority.  LRCiv. 7.2(g)(1).  The Court will not depart from its prior ruling.

### B.  Qualified Immunity.

Under the doctrine of qualified immunity, government officials are protected from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). To overcome this immunity, a plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (citation and quotation marks omitted).

In *Filarsky v. Delia*, 132 S. Ct. 1657 (2012), the Supreme Court held that private individuals hired by the government are entitled to qualified immunity from lawsuits related to their work.  132 S. Ct. at 1665.  The Court noted that "the common law did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities." *Id.* at 1663.  The Court also noted that the policies underlying the qualified immunity doctrine – the public interests in ensuring that the government can perform its duties free from

litigation-related distractions and apprehensions, and ensuring that talented candidates are not deterred from entering public service – apply equally to public servants and private individuals hired to perform government functions. *Id.* at 1665-66.

Courts have also recognized, however, that the historical and policy rationales for qualified immunity are less convincing where the government hires a private firm to discharge a significant public function and allows it to perform this function with minimal public oversight. In many instances, there is no firmly rooted tradition of immunity for private contractors performing particular public functions because private contractors have only recently begun to perform the function. *See United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 483 (6th Cir. 2014) (finding no historical tradition of immunity for private individuals providing animal welfare services for the state, because state did not provide these services prior to the enactment of 42 U.S.C. § 1983). In other cases, the common law explicitly denied immunity to private actors performing a public function. *See Richardson v. McKnight*, 521 U.S. 399, 404 (1997) (finding that the common law did not confer immunity on privately employed prison guards); *Gregg v. Ham*, 678 F.3d 333, 340 (4th Cir. 2012) ("there is no evidence that bail bondsmen have historically been afforded immunity for their actions"). Moreover, the policy concerns underlying qualified immunity are less present when a large, private entity is employed to discharge public functions. Unlike government agencies, private firms are subject to market pressures which counteract any tendency towards excessive restraint. *Richardson*, 521 U.S. at 404. Private firms can also offer their employees indemnification, higher pay, and additional benefits to offset the risk of liability. *Id.* at 411. In light of these considerations, the Supreme Court has held that a private contractor's employees are not entitled to qualified immunity if the contractor (1) has been hired to perform a major governmental function for an extended period, (2) operates with limited direct supervision by the government, and (3) operates for profit and in competition with other firms. *Filarsky*, 132 S. Ct. at 1667 (citing *Richardson*, 521 U.S. at 413).

The facts of this case are similar to those in *Richardson*. Defendant's employer, Boyle PLLC, was retained to serve as Town Prosecutor for an indefinite period. Doc. 21 at 18. It operated without any direct supervision from the Town's elected officials; according to its contract, "[t]he Town does not have the authority to supervise or control the actual work of the [Boyle PLLC] or [its] employees or agents." *Id.* at 21. Drawing all reasonable inferences in favor of Plaintiff, it is plausible to conclude that Boyle PLLC operates for profit and in competition with other firms. Given these facts, the Court cannot conclude that Defendant, as an employee of Boyle PLLC, is entitled to qualified immunity.

That is particularly so given the absence of a compelling historical or policy reason for extending immunity. While "private lawyers were regularly engaged to conduct criminal prosecutions on behalf of the State" at the time § 1983 was adopted, and these lawyers were generally accorded immunity at common law, *Filarsky*, 132 S. Ct. at 1663, Defendant has not cited any evidence that *non-legal* employees of private law firms were accorded immunity.[1] As for policy concerns, it is reasonable to infer that Boyle PLLC is subject to market pressures which counteract any tendency towards excessive restraint, and that Boyle PLLC can offer indemnification and higher pay to offset the risk of liability. *Cf. Richardson*, 521 U.S. at 404. The Court therefore concludes that Defendant is not entitled to qualified immunity.[2]

///

---

[1] Nor is it clear from the history discussed in *Filarsky* that immunity extended to cases where a private law firm operated without direct governmental supervision.

[2] The Court's approach, and its conclusion, are supported by the Sixth Circuit's decision in *United Pet Supply*, 768 F.3d 464. The defendant in that case was employed by a non-profit organization under contract to provide animal welfare services to the City of Chattanooga. *Id.* at 471. The defendant was sued under § 1983 for allegedly conducting an unconstitutional search, and she asserted qualified immunity. The court held that she was not entitled to qualified immunity because (1) her employer was under contract to perform a major governmental function for an extended period; (2) her employer operated with limited direct supervision by the government; (3) her employer, though a non-profit, was subject to market pressure insofar as it might lose its contract if it failed to discharge its duties with sufficient zeal; (4) there was no history of providing immunity to similarly situated defendants; and (5) the policy underlying the qualified immunity doctrine did not support extending the doctrine to the defendant. *Id.* at 481-82.

- 5 -

**C.     Failure to State a Claim.**

**1.     Count 1.**

Plaintiff's first count asserts that Defendant violated the Equal Protection Clause by failing to disclose a page of the police report at issue in this case, and by ordering Plaintiff "to admit guilt without the benefit of an attorney or an impartial, fair tribunal." Doc. 54, ¶¶ 8-9.  The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff has not stated a claim under this standard because she has not shown that Defendant intentionally treated her differently from other individuals facing minor criminal charges.  Nor has she shown that it was irrational for Defendant to request that she pay Calvert's vet bill.  According to the documents Plaintiff attached to her original complaint, the police officer who investigated the incident requested that charges be filed against Plaintiff for allowing her dogs to run at large.  Doc. 1-1 at 14.  These documents also confirm that Calvert incurred a vet bill in the amount which Defendant requested Plaintiff to pay. *See id.* at 18.[3]

Plaintiff's first count argues that the same conduct violates the Due Process Clause.  But the government can, consistent with the Due Process Clause, "openly present[] [the accused] with the unpleasant alternatives of forgoing trial or facing charges on which [s]he was plainly subject to prosecution." *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978).  When Defendant told Plaintiff that charges would be filed if she refused to pay the vet bill, Defendant was effectively offering a plea bargain.  Plaintiff has not alleged facts which give rise to the plausible inference that she was forced to accept this offer.  Nor has she alleged facts that give rise to the plausible inference that the charges against her were meritless.  To the contrary, the police report and vet bill

---

[3] These documents are properly considered in ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

- 6 -

attached to Plaintiff's complaint suggest that there was a plausible basis to prosecute her. The Court will dismiss this claim.

### 2. Count 2.

Plaintiff's second count asserts that Defendant violated the Fourth Amendment, as incorporated by the Fourteenth Amendment, but she does not identify any search or seizure initiated by Defendant. The Court will dismiss this claim.

### 3. Count 3.

Plaintiff's third count asserts that Defendant violated her Fifth Amendment right against self-incrimination by ordering her to admit guilt. That right does not attach until the government "use[s] an incriminating statement to initiate or prove a criminal charge." *Stoot v. City of Everett*, 582 F.3d 910, 925 n.15 (9th Cir. 2009). Plaintiff does not allege that the government ever initiated criminal charges. The Court will dismiss this claim.

### 4. Count 4.

Plaintiff's fourth count asserts that Defendant violated her Sixth Amendment right to effective representation of counsel. That right "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (citations and internal formatting omitted). Plaintiff does not allege that criminal proceedings were ever initiated against her. The Court will dismiss this claim.

### 5. Count 5.

Plaintiff's fifth count asserts that Defendant violated the rule of corpus delicti. She does not identify any federal law that incorporates this rule, as would be required to state a claim under § 1983. The Court will dismiss this claim.

### 6. Count 6.

Plaintiff's sixth count asserts that Defendant engaged in malicious prosecution. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional

right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citations omitted and alterations incorporated). The complaint does not allege that any charges were filed against Plaintiff. The Court will dismiss this claim.

### 7. Remaining Counts.

Plaintiff's seventh count asserts that Defendant violated § 1983. This count fails because Plaintiff has not adequately pleaded any deprivation of a federal constitutional or statutory right. Her eighth count asserts that Defendant violated 42 U.S.C. § 1985. Such a claim cannot proceed absent a valid claim under § 1983. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 930 (9th Cir. 2004) ("[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983"). Plaintiff has abandoned her ninth count. Doc. 67 at 12.

## D. Leave to Amend.

"A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (quotation marks omitted). But "[a] district court does not err in denying leave to amend where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)).

The Court has already given Plaintiff leave to amend her complaint once to assert claims against Defendant. Any additional amendment would likely be futile. As Plaintiff has consistently maintained that she was never prosecuted, there are no facts that she could add to her complaint that would salvage her malicious prosecution, Fifth Amendment, or Sixth Amendment claims. Plaintiff cannot cure her Fourth Amendment claim because no search or seizure has been identified. Plaintiff's corpus delicti claim is unavailable as a matter of law because the doctrine is not incorporated by any federal law. Finally, the Court has no reason to believe that Plaintiff could, in a second amended complaint, establish that Defendant violated the Due Process or Equal Protection Clauses.

The documents Plaintiff attached to her original complaint – including the police report and the vet bill for Calvert's horse – establish a rational basis for pursing charges against her, or, in the alternative, offering to drop the charges in exchange for her payment of the vet bill.

**IT IS ORDERED** that the Defendant's motion to dismiss (Doc. 62) is **granted** without leave to amend.

Dated this 16th day of May, 2016.

_____
David G. Campbell
United States District Judge